## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Lee O. Wilson, Jr., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09cv334 (LMB/TRJ) |
| | ) | |
| Gene M. Johnson, et al., | ) | |
| Defendants. | ) | |

F I L E D

25

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

### MEMORANDUM OPINION

Lee O. Wilson, a state inmate currently housed at Lunenburg Correctional Center and proceeding pro se, has filed a civil action pursuant to 42 U.S.C. § 1983, alleging numerous violations of his constitutional rights at his former place of incarceration, St. Brides Correctional Center ("SBCC"). Plaintiff has neither paid the filing fee required by 28 U.S.C. § 1914(a) nor applied to proceed in forma pauperis in the lawsuit.

Plaintiff's complaint sets out the following claims: (1) denial of plaintiff's right of access to the courts because SBCC attached a money withdrawal slip to an envelope despite plaintiff's inability to pay the postage; (2) cruel and unusual punishment arising out of plaintiff being classified as Security Level (1) inmate but being transferred to a Level (2) Compound for budgetary reasons; (3) cruel and unusual punishment based on plaintiff being fed an inadequate amount of food; (4) violation of plaintiff's rights under the Eighth Amendment because he was not allowed to smoke; (5) cruel and unusual punishment where the volume on the television set in the dayroom was kept at an inadequate level to permit plaintiff to hear it; (6) cruel and unusual punishment because plaintiff's institution "refuse[d] to" get cable or satellite T.V. "like the majority of the (VDOC) compounds;" (7) violation of plaintiff's rights under the Fifth, Eighth and Fourteenth Amendments because his legal update sheet does not reflect credit for 84 days he spent in a therapeutic halfway house as the unserved portion of an original sentence; (8) violation of plaintiff's rights to due

process and to be free of cruel and unusual punishment where he was denied transfer to a work center, in contravention of D.O.P. 830.5; (9) cruel and unusual punishment where SBCC refused to allow an inmate who has had a disciplinary infraction within the past ninety (90) days to have a job; (10) violation of plaintiff's Eighth Amendment rights where inmates were locked in the dormitory vestibule while awaiting transportation, thus creating a fire and safety hazard; (11) violation of plaintiff's rights under the Fifth and Eighth Amendments by the Treatment Program Supervisor at SBCC, who reneged on a promise to assist plaintiff in securing placement at a work center; (12) violation of plaintiff's Eighth Amendment rights where the stress of being confined at an inappropriate security level caused his blood pressure to rise; (13) cruel and unusual punishment because inmates at the same classification level were not given equal access to the recreational yard; and (14) violation of plaintiff's rights under the Fifth and Eighth Amendments because the law library at SBCC is inadequate.

Plaintiff names eleven (11) defendants in connection with these claims. As relief, he seeks compensatory and punitive damages in an aggregate amount of $3,000,000.00, and injunctive relief in the form of the dismissal of all defendants from their positions with Virginia Department of Corrections ("VDOC"). After reviewing plaintiff's complaint, the claims must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) as frivolous and for failure to state a claim.[1]

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
(1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

## I. Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

## II. Analysis

### A. Claim (1)

In his first claim, plaintiff contends that his right of access to the courts was violated by SBCC's policy of attaching a money withdrawal slip to an envelope when plaintiff could not afford to pay the postage. Taking plaintiff's allegations as true, he fails to state a claim of denial of access

---

(2) seeks monetary relief from a defendant who is immune from such relief.

3

to the courts because he has not demonstrated that he suffered an injury as the result of the practice

he challenges. Inmates have a right to meaningful access to the courts, which merely requires that

individuals acting under color of state law cannot hinder an inmate in his efforts to pursue a legal

claim. Bounds v. Smith, 430 U.S. 817, 822 (1977)); Lewis v. Casey, 518 U.S. 343 (1996); see also

Hause v. Vaught, 993 F.2d 1079, 1084 (4th Cir. 1993). To state a claim for denial of access to the

courts, plaintiff must establish that he suffered an "actual injury or specific harm." Hause, 993 F.2d

at 1084-85; see Strickler v. Waters, 989 F.2d 1375, 1382 (4th Cir.), cert. denied, 510 U.S. 949

(1993); Magee v. Waters, 810 F.2d 451, 452-53 (4th Cir. 1987). In order to make out a prima facie

case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must

identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d

1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989). Actual

injury requires the inmate to "demonstrate that his nonfrivolous, post-conviction or civil rights legal

claim has been frustrated or impeded." Jackson v. Wiley, 352 F. Supp. 2d 666, 679-80 (E.D. Va.

2004).

Here, plaintiff fails to show that defendants impeded his access to the courts in a meaningful

way. In fact, plaintiff does not allege that prison officials failed to post his legal mail; instead, he

states only that a money withdrawal slip was attached to the envelope when he lacked funds to pay

the postage. Plaintiff makes no allegation whatever that he suffered any actual injury as the result

of this practice. Under these circumstances, no claim of denial of access to the courts has been stated.

To the extent that plaintiff argues that a provision of the Virginia Department of Corrections'

operating procedures was violated by the practice of attaching money withdrawal slips to his

outgoing legal mail, a state's failure to abide by its own procedural regulations presents no federal

due process issue. Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990); see generally, Harksen v. Braxton, 2004 WL 5645580 at *2 (D. W. Va. Nov. 9, 2004) (prison's retention of outgoing non-legal mail for 30 days at most violated Department of Prisons regulations and did not rise to the level of constitutional deprivation and hence did not state a cause of action under § 1983). Therefore, any violation of rules or procedures established by the Virginia Department of Corrections is not actionable under § 1983, and Claim (1) will be dismissed pursuant to § 1915A.

**B. Claim (2)**

In his second claim, plaintiff asserts that his transfer to SBCC "due to 'Budget Cuts'" amounted to cruel and unusual punishment, because he is classified as a Level 1 inmate and thus is eligible for placement at a work center or field unit, but SBCC is a Level 2 compound and allegedly "facilitated like it is a Security Level (4 or 5) Institution," which means that plaintiff was "compelled to be behind (3) fences at all times."

To establish a claim of cruel and unusual punishment, plaintiff must allege and prove (1) an objectively serious deprivation of a basic human need, one causing serious physical or emotional injury and (2) that prison officials acted with deliberate indifference to his needs. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see Strickler, 989 F.2d at 1379 (defining serious deprivation as evidence of a serious medical and emotional deterioration attributable to the challenged condition). A defendant who is lawfully convicted and confined to jail loses a significant interest in his liberty for the period of that sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Confinement does not strip inmates of all liberty interests, and the due process clause of the Fourteenth Amendment mandates procedural safeguards before an inmate can be punished by conditions so dramatically different from the basic range of constraints contemplated by his sentence. Sandin v.

Conner, 515 U.S. 472, 483-84 (1995).  However, as the Supreme Court recognized in Sandin, such

liberty interests "will generally be limited to the freedom from restraint which, while not exceeding

the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause

by its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life."  Id. at 484.

In this case, the only difference in the conditions of his confinement to which plaintiff points

is that while at SBCC, he was "compelled to be behind (3) fences at all times."  The United States

Court of Appeals for the Fourth Circuit has held that confining segregation inmates for more than

six months in conditions far worse than those alleged by this plaintiff was insufficient to create any

federally-protected liberty interest in avoiding such conditions.  See Beverati v. Smith, 120 F.3d 500,

504 (4th Cir. 1997) (complaints of no outside recreation, no clean clothes, less food, and cells

infested with vermin not so atypical as to create a liberty interest in avoiding such status so as to

mandate federal due process protections before an inmate could be moved to segregation).  Under

these principles, plaintiff's allegations concerning his placement in a Level 2 facility state no

actionable claim for violation of his constitutional rights, and claim (2) must be dismissed pursuant

to § 1915A.

### C. Claim (3)

In his third claim, plaintiff asserts that he was subjected to cruel and unusual punishment at

SBCC because he was not fed in accordance with "federal standards," which allegedly require that

an inmate receive 2,750 to 3,000 calories per day.  However, despite numerous letters and grievances

from plaintiff, food service personnel at SBCC "exude[d] tyrant behavior" and "serve[d] minute

portions well below" what is sanctioned. Plaintiff alleges that as a result, his weight dropped from

217 to 205 pounds. Plaintiff also states without further explanation that "weekend and or holiday meals is supposed to be a brunch for breakfast and an enhanced meal for dinner due to only being served (2) meals."

It is well settled that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted); see Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir.), cert. denied, 439 U.S. 837, (1978) (concluding inmate's allegation of failure to provide adequate sanitary food service facilities can state a cognizable claim). Although the Eighth Amendment requires prisons to provide inmates with wholesome and nutritious meals, an inmate must allege a serious injury arising from the provision of inadequate food to state an Eighth Amendment violation. See Wilson v. Seiter, 501 U.S. 294, 298 (1991); White v. Gregory, 1 F.3d 267, 268 (4th Cir. 1993), cert. denied, 510 U.S. 1096 (1994) (concluding that plaintiff failed to state a claim because he failed to allege "serious or significant physical or mental injury" from being served only two meals a day on holidays and weekends); Islam v. Jackson, 782 F. Supp. 111, 114-115 (E.D. Va. 1992) (holding that plaintiff who became ill after eating one meal but was treated immediately and suffered no lasting affects did not state a serious injury); Lunsford v. Reynolds, 376 F. Supp. 526 (W.D. Va. 1974) (determining that a claim of occasional incidents of foreign objects in food does not state Eighth Amendment claim).

In this case, plaintiff states no claim for an Eighth Amendment violation, because he fails to allege that he suffered a serious injury due to receiving inadequate food. Cf. Wilson, 501 U.S. at 298. The plaintiff's alleged loss of twelve pounds, coupled with the fact that his weight admittedly remained above 200, is insufficient to indicate that a violation of his constitutional rights occurred.

7

The absence of a serious physical or mental injury also precludes relief for plaintiff's allusion to receiving two meals a day on weekends and holidays. White, 1 F.3d at 268. Therefore, claim (3) states no claim for which § 1983 relief is available, and will be dismissed pursuant to § 1915A.

### D. Claim (4)

Plaintiff's fourth claim, where he alleges that his rights under the Eighth Amendment were violated by SBCC's prohibition of smoking, likewise states no claim for which relief can be granted. As this court has recognized, "[t]he Eighth Amendment does not prevent prison officials from banning smoking altogether from prison facilities, as no prisoner has the constitutional right to smoke." Bartlett v. Pearson, 406 F. Supp. 2d 626, 634 n.14 (E.D. Va. 2005); accord, Grass v. Sargent, 903 F.2d 1206 (8th Cir. 1990) ("There is no constitutional right to smoke in prison."). Because a no-smoking policy does not deprive inmates of the "minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337 (1981), an inmate's claim asserting that such a policy violates his Eighth Amendment rights must fail.

Plaintiff points out that guards at his place of confinement are permitted to smoke, and argues that "in all fairness" he should have the same right. However, courts have recognized that where prison staff members can smoke but inmates cannot, the distinction is not violative of due process because it is not irrational. Reynolds v. Bucks, 833 F.Supp. 518 (E.D. Pa. 1993). "Inmates are simply not entitled to all of the privileges enjoyed by those who are not incarcerated." Id. at 521 (citing Bell v. Wolfish, 441 U.S. 520, 554 (1979)). It is well settled that courts should defer to the judgment of prison administrators in matters affecting inmates' health and safety, so a prison's no smoking policy which is not "arbitrary, purposeless or intended to punish is a matter to be left to prison or jail officials." Doughty v. Bd. of County Comm'rs, 731 F. Supp. 423, 428 (D. Colo. 1989).

8

Here, then, plaintiff's fourth argument states no claim for which relief can be granted, and will be dismissed pursuant to § 1915A.

### E. Claims (5) and (6)

In his fifth claim, plaintiff asserts that he suffered cruel and unusual punishment at SBCC when the volume on the television set in the dayroom was kept at an inadequate level to permit plaintiff to hear it, and he was told that the only way he could listen to the television was to buy a radio through which he could hear the sound. In his sixth claim, which is closely related, plaintiff argues that he was subjected to cruel and unusual punishment because, unlike like other VDOC facilities, SBCC refused to get cable or satellite television. Taken as true, neither of these contentions states a claim of constitutional deprivation.

"There is no constitutional right to watch television." Murphy v. Walker, 51 F.3d 714, 718 n.8 (7th Cir. 1995); accord, James v. Milwaukee County, 956 F.2d 696, 699 (7th Cir. 1992) ("[A] prisoner who is denied ... a television set has not set out a deprivation of [his rights under] ... the Eighth Amendment."). In Coleman v. Granholm, 2008 WL 919642 (E.D. Mich. Apr. 2, 2008), the court in pertinent part denied a claim by prisoners who alleged that their segregated status deprived them of access to television and radio. The court noted that the Eighth Amendment does not mandate comfortable prisons, and instead obligates prison officials only to ensure that inmates are confined humanely. Id. at *14 (citing Farmer, 511 U.S. at 832). Thus, in the context of cases dealing with conditions of confinement, the Eighth Amendment is concerned only with "deprivations of essential food, medical care or sanitation." Id. (citing Rhodes, 452 U.S. at 379). Because the plaintiffs' grievances, including their lack of access to television, included no assertions of conditions that fell within those categories or could be deemed intolerable for prison inmates, the court in Coleman

9

determined that no Eighth Amendment violation had been demonstrated.

In this case, plaintiff's claims concerning television usage are more attenuated than those discussed and rejected by the foregoing authorities. Here, plaintiff does not allege that he was denied television access altogether, but instead claims only that the volume of the TV set at SBCC and the range of available non-cable programing were inadequate. As such conditions cannot be deemed intolerable for prison inmates, they do not implicate the Eighth Amendment, see Rhodes, 452 U.S. at 379, so no claim for § 1983 relief has been stated, and claims (5) and (6) of this complaint will be dismissed pursuant to § 1915A.

### F. Claim (7)

In his seventh claim, Wilson argues that his rights under the Fifth, Eighth and Fourteenth Amendments were violated because his legal update sheet does not reflect credit for 84 days he spent in a therapeutic halfway house as the unserved portion of an original sentence. As a result of this error, plaintiff alleges that he has been "made to serve time beyond what [he] should've been accredited." Such an allegation, which attacks the fact or duration of confinement, is remediable first by a petition for writ of habeas corpus, rather than a claim under 42 U.S.C. § 1983. Preiser v. Rodriguez, 411 U.S. 475, 487 (1973); see generally, Wilkinson v. Dotson, 544 U.S. 74, 78-82 (2005) (summarizing the distinctions between § 1983 and habeas actions). As the Supreme Court has noted, a § 1983 claim for unconstitutional imprisonment is not appropriate unless and until plaintiff's conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); see also Edwards v. Balisok, 520 U.S. 641, 646-47 (1997) (recognizing a valid §

10

1983 claim when the procedural claim at issue does not call into question the lawfulness of plaintiff's continuing confinement). Because plaintiff's allegations in claim (7) call into question the lawfulness of the duration of plaintiff's confinement, they sound in habeas corpus rather than § 1983. <u>Preiser</u>, 411 U.S. at 487. Therefore, claim (7) of this complaint will be dismissed pursuant to § 1915A, without prejudice to plaintiff's ability to make the same argument in a habeas corpus petition pursuant to 28 U.S.C. § 2254 after first exhausting his available administrative and state court remedies.

### G. Claim (8)

In his eighth claim, Wilson alleges that his rights to due process and to be free of cruel and unusual punishment were violated when he was denied transfer to a work center, in contravention of D.O.P. 830.5. It is a well-established principle that an inmate has no constitutional right to be housed in any particular facility or to be transferred to a different facility upon request. <u>Olim v. Wakinekona</u>, 461 U.S. 238 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215 (1976). A prisoner has no due process interest in his placement at a particular prison, nor does the Constitution "guarantee that the convicted prisoner will be placed in any particular prison." <u>Meachum</u>, 427 U.S. at 223-25; <u>see also</u>, <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n. 9 (1976). Moreover, Virginia's prison transfer regulations do not create any liberty interest in a specific housing assignment, as prison officials have broad discretion under the regulations to determine the facility at which an inmate is housed. <u>See Sandin</u>, 515 U.S. at 472; <u>Olim</u>, 461 U.S. at 238 (no liberty interest created under law prior to <u>Sandin</u>). Therefore, the denial of plaintiff's request to be transferred to a work center created no cause of action under § 1983, and claim 8 as a whole is without merit and must be dismissed. 28 U.S.C. § 1915A(b)(1).

### H. Claim (9)

In his ninth claim, plaintiff alleges that he suffered cruel and unusual punishment at SBCC because that institution has an "unwritten policy" of not allowing an inmate who has had a disciplinary infraction within the previous ninety (90) days to have a job. Plaintiff characterizes this rule as a "display of tyrannical behavior" because it is "not in concert" with VDOC policy.

It is well established that prisoners have no constitutional right to job opportunities while incarcerated. Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980); Awalt v. Whalen, 809 F. Supp. 414, 416-17 (E.D. Va. 1992) (prisoners do not have a constitutionally-protected right to work while incarcerated, or to remain in a particular job once assigned). A prisoner has no constitutionally-protected liberty interest in any particular job assignment or work detail.   Johnson v. Knable, 862 F.2d 314, 1988 WL 119136, **1 (4th Cir. 1988) (table) ("[P]rison work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate."); Olim, 461 U.S. at 250. "[T]he classifications and work assignments of prisoners ... are matters of prison administration, within the discretion of the prison administrators...." Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir.), cert. denied, 435 U.S. 1009 (1978); accord, Mitchell v. Murray, 856 F. Supp. 289, 293 (E.D. Va. 1994). Therefore, prisoners' work entitlement can be restricted by rules stemming from valid penological concerns such as security and order. Bulgar v. Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995).

Here, taking plaintiff's allegations as true, it is apparent that an institutional policy prohibiting inmates who violate disciplinary rules from working for ninety days thereafter would promote legitimate penological concerns.  Assuming that plaintiff lost a work assignment as the result of such a policy, he can state no claim for violation of his constitutional rights stemming from

12

such a circumstance.  See Williams v. Meese, 926 F.2d 994. 998 (10th Cir. 1991) (removing a prisoner from a job does not rise to the level of cruel and unusual punishment). Accordingly, claim (9) of this complaint will be dismissed pursuant to § 1915A.

### I. Claim (10)

In his tenth claim, Wilson argues that his rights under the Eighth Amendment were violated because SBCC locks "a majority of the dorm" in the vestibule to await movement, thereby creating a fire hazard and jeopardizing the inmates' safety. In the prison context, only deprivations which deny "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. Wilson, 501 U.S. at 298 (citing Rhodes, 452 U.S. at 349). To be actionable, the challenged deprivation must have resulted in a serious injury to the prisoner. Strickler, 989 F.2d at 1381 ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment."). Here, plaintiff makes no assertion that he suffered any actual harm as the result of the SBCC policy he challenges, so he has stated no claim for violation of his Eighth Amendment rights, and the tenth claim of this complaint will be dismissed pursuant to §1915A.

### J. Claim (11)

In his eleventh claim, plaintiff contends that his rights under the Fifth and Eighth Amendments were violated by SBCC's Treatment Program Supervisor, Ms. Taylor, who promised but failed to assist plaintiff in securing placement at a work center. As discussed earlier in this opinion, plaintiff had no enforceable right to such a transfer. Olim, 461 U.S. at 238; Meachum, 427 U.S. at 215. Taking as true plaintiff's allegation that Ms. Taylor "did not keep her word as honored"

to make a telephone call on plaintiff's behalf to inquire about the transfer, no deprivation of constitutional magnitude has been demonstrated, and claim (11) will be dismissed pursuant to §1915A.

### K. Claim (12)

In his twelfth claim, plaintiff alleges that his rights under the Eighth Amendment were violated because the stress of being confined at an inappropriate security level has caused his blood pressure to rise. As noted above, no Eighth Amendment claim will lie in the absence of a serious injury to the prisoner. Strickler, 989 F.2d at 1381; see, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious to sustain an Eighth Amendment claim); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Here, in contrast, the sole harm that plaintiff claims to have suffered as the result of his confinement at SBCC is an elevation in his blood pressure, which he describes as an "ongoing medical issue which is detrimental or pernicious to [his] health." Because such generalized factual allegations are insufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 55, claim (12) states no claim for relief, and must be dismissed for failure to state a claim.

### L. Claim (13)

In his thirteenth claim, plaintiff asserts that he suffered cruel and unusual punishment at SBCC because inmates at the same classification level were not given equal access to the recreational yard. Plaintiff explains that SBCC moves inmates to the recreation yard every 1 ½ hours, whereas "all other facilit[ies]" have movements every hour or half hour. Moreover, the projected schedule is not kept, and plaintiff asserts that "if" another inmate at his classification level has

14

greater access to a recreation area than he does, unfairness is being shown.

As discussed above, a prison regulation creates a liberty interest and implicates federal due process protections only where the regulation imposes upon the inmate conditions which dramatically depart from the expected conditions of his indeterminate sentence. Sandin, 515 U.S. at 485. "[C]hanges in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges - matters which every prisoner can anticipate - are contemplated by his original sentence to prison." Gaston, 946 F.2d at 343; Beverati, 120 F.3d at 502; Alley v. Angelone, 962 F. Supp. 827, 833 (E.D. Va. 1997). Because plaintiff has no liberty interest in maintaining any particular recreation schedule, he fails to state a claim that any due process violation occurred, and claim (13) must be dismissed pursuant to § 1915A.

### M. Claim (14)

In his fourteenth claim, Wilson asserts that his rights under the Fifth and Eighth Amendments were violated because the law library at SBCC is inadequate. Specifically, plaintiff states that the SBCC library has no typewriter or computer where case law can be accessed on the Lexis website, there is no privacy because the library is located in a counselor's office, and the law librarian is "incompetent" and "of no assistance."

Inmates have a right to meaningful access to the courts, which "can be satisfied either by providing inmates with adequate law libraries or with adequate assistance from persons trained in the law." Hause, 993 F.2d at 1084 (citing Bounds, 430 U.S. at 822). To state a claim for denial of access to the courts, plaintiff must establish that the law library or legal assistance was inadequate and that plaintiff suffered an "actual injury or specific harm." Id. at 1084-85; see, e.g., Strickler, 989

15

F.2d at 1382; <u>Magee</u>, 810 F.2d at 452-53. Actual injury requires that the inmate "demonstrate that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded." <u>Jackson v. Wiley</u>, 352 F. Supp. 2d 666, 679-80 (E.D. Va. 2004). Here, plaintiff has stated no claim for which § 1983 relief is available, because he has not alleged that he sustained an actual injury as a result of the alleged inadequacy of SBCC's law library. Specifically, plaintiff does not claim that he was prevented from meeting deadlines or otherwise prejudiced in any pending litigation. As a result, claim (14) of this complaint must be dismissed for failure to state a claim.

### III. Conclusion

For the above-stated reasons, the complaint must be dismissed as frivolous and for failure to state a claim for which relief can be granted, pursuant to §1915A(b)(1). An appropriate Order shall issue.

Entered this 25th day of _August_ , 2009.

Alexandria, Virginia

/s/
**Leonie M. Brinkema**
**United States District Judge**